ROBERT LEON STAMPS, Appellant, *v.* THE STATE OF NEVADA, Respondent.

No. 21091

June 6, 1991 812 P.2d 351

*George E. Graziadei* and *Scott Michael Cantor,* Las Vegas, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Rex Bell,* District Attorney, *James Tufteland,* Chief Deputy District Attorney, *Thomas J. Moreo,* Deputy District Attorney, Clark County, for Respondent.

---

## OPINION

*Per Curiam:*

This is a child sex-abuse case. In the spring of 1988, the child's mother, Jan Stamps, Robert Stamps' estranged wife, claims that while she was having a talk with her daughter about "good touching" and "bad touching," the child, Shana, stated that "daddy put his finger in me." According to Jan, Shana stated that the incident had happened while her father was giving her a bath around three years before (when Shana was three years old). This conversation prompted Jan to take Shana to a variety of counselors and child abuse investigators.

Shana told a number of assorted stories to these people. When first interviewed, Shana stated that she had been assaulted by her half-brother, Paul. She later recanted this story. Shana next told the therapists that her father had "stuck a spoon up her butt," and that her father had had sexual intercourse with her; Shana later admitted that these stories were also lies. During trial, Shana stated that none of the stories that she had told the police about this case was true, that she had lied under oath before, and that the oath "didn't really mean that much."

Despite the fact that Shana's stories changed often, both the counselors and the police became convinced that Shana's father had been sexually engaged with Shana. The State took the position that Shana was being truthful about the following allegations: (1) that her father had licked her breasts; (2) that her father had fondled her breasts; (3) that her father had inserted his finger into

her vagina on four separate occasions; and (4) that her father had placed his penis into her mouth. These allegations formed the basis of the seven criminal counts with which Robert was charged.

At trial, Shana admitted that she had lied in the past but testified that the above-enumerated acts had actually occurred. There was other testimony at trial that Shana had been engaged in sexual activity with *someone.* Shana's mother and grandmother testified as to Shana's telling them of sexual events that incriminated her father and as to Shana's behavior before and after the alleged events occurred. Robert Stamps, Shana's father, took the witness stand and denied any sexual activity with his own daughter.

The jury returned guilty verdicts on four of seven counts. More specifically, the jury found that: (1) Robert had licked Shana's breasts (lewdness with a minor); (2) Robert had twice inserted his finger into Shana's vagina (two counts of sexual assault with a minor); and (3) Robert had placed his penis into Shana's mouth (one count of sexual assault with a minor). Following the judgment of conviction, Robert was sentenced to ten years in the Nevada State Prison on the lewdness conviction and to one life term on each of the three sexual assault convictions, the sentences to run consecutively. This appeal followed.

One of Robert's defenses at trial was that his estranged wife Jan was behind the sex-abuse charges made by his daughter and that in doing so Jan was motivated by a desire to obtain sole custody of Shana. To support this argument, Robert's counsel started to read material from a juvenile court dispositional report that related to this issue. Counsel, referring to the report, asked juvenile protective service officer Vicki Shaver (the author of the report) if it was "fair to say that Jan [Stamps] ha[d] taken a sensitive situation like this and tried to further her own goals of alienating Shana from her father." Before defense counsel could pursue the matter further the prosecuting attorney objected to further reference to the juvenile report on the ground that it was confidential.[1] A conference was then held off the record, after which, the State's objection on the ground of confidentiality was sustained.[2]

---

[1] The contents of juvenile proceedings are made confidential under NRS 62.360.

[2] At oral argument, Deputy District Attorney Thomas Moreo made certain representations to this court relative to mentioned off-the-record, side-bar statements made by the district court and counsel. In fact, Moreo advised this court that the trial court did not rule on the admissibility of the report but merely instructed defense counsel not to read from the dispositional report. It

The juvenile report in question contains statements that would have been quite helpful, if not critical, to Robert's defense. First, in discussing the history of this case, Ms. Shaver wrote on page six, line twenty-one, that:

> Both parents have accused the other of deviant sexual practice and/or fantasies. Mrs. Stamps accused Mr. Stamps of engaging in sexual activity with a neighbor child of Shana's age. This was investigated by Nevada State Welfare and found to be untrue. The family was subsequently interviewed by Mariana van Hyning of the Child Custody Division, who also felt the allegations were untrue.

The other statement relevant to this discussion begins at page eight, line twenty-seven, of the report and continues through page nine, line three. Here, Ms. Shaver states that "[i]t is this probation officer's opinion that [Jan Stamps] has used this sensitive situation to further her own goals of alienating the child from her father."

Appellant now claims that the district court erred when it excluded this clearly probative evidence on the ground of the dispositional report's confidentiality. More specifically, Robert argues that he should have been allowed to utilize this report in his cross-examination of Ms. Shaver, and the failure of the district court to allow him to do so violated his rights under the confrontation clause of the sixth amendment. We now turn to this question.

Our analysis on this issue is controlled by Davis v. Alaska, 415 U.S. 308 (1974). In *Davis,* the United States Supreme Court was presented with a conflict between a state's interest in protecting the confidentiality of juvenile proceedings and the right of a criminal defendant to confront witnesses that are testifying against him. In *Davis,* a prosecution witness had been adjudicated a juvenile delinquent and was on probation at the time he

---

seems rather clear, however, that Mr. Moreo's objection went beyond defense counsel's mere reading of the report and that his objection went to the whole document on the ground of the document's being "confidential."

Mr. Moreo also advised this court during oral argument that there was nothing in the report that was helpful to the defendant or harmful to the prosecution. At the time Mr. Moreo made his statements to this court, we had no way of verifying their accuracy, since appellant's counsel was not trial counsel, and the juvenile report was not part of the record. Accordingly, we allowed appellant to supplement the record with a copy of the juvenile report. *See* NRAP 28(e). Our review of this dispositional report indicates that Mr. Moreo was less than candid in his representations at oral argument. As stated in the text, the report in question is clearly helpful to the defense and therefore harmful to the prosecution, contrary to the representations made by Mr. Moreo to this court at oral argument.

was to testify. *Id.* at 310-11. On cross-examination, defendant sought to inquire as to whether the witness' probation status might lead the witness to be biased in favor of the state. *Id.* at 311.

The trial court had ruled that because of Alaska's policy in preserving the confidentiality of juvenile proceedings, such cross-examination was not allowed. *Id.* The United States Supreme Court reversed, however, holding that the state's interest in protecting the confidentiality of juvenile proceedings must yield to the right of a criminal defendant to confront witnesses that are testifying against him. *Id.* at 319.

We applied the *Davis* doctrine in Pickard v. State, 94 Nev. 681, 585 P.2d 1342 (1978). In *Pickard,* we stated that, under *Davis,* "a state's policy interest in protecting the confidentiality of a juvenile offender's records, must yield to the right of effective cross-examination to test the credibility of a witness under the Sixth Amendment of the federal constitution." *Pickard,* 94 Nev. at 683, 585 P.2d at 1343. Accordingly, we held that it was error to deny defendant's request to examine the juvenile records of the principle prosecution witness. *Id.* We further held that such error was harmless, however, because defendant had been allowed to cross-examine the witnesses extensively concerning their relationship with the prosecution and the possibility of an immunity grant. *Id.* at 683-84, 585 P.2d at 1343.

An application of the above principles to the instant case makes it clear that the trial court erred in ruling that, because of Nevada's policy in preserving the confidentiality of juvenile records, Robert could not cross-examine Ms. Shaver as to her statements in the prior juvenile proceeding. To begin, we note that this case provides a much more compelling scenario than either *Davis* or *Pickard.* In *Davis,* the trial court's prohibition of the use of the witness' juvenile delinquency adjudication would, in fact, have served to keep the adjudication confidential. In this case, however, it is unclear as to the goals that were served by excluding Ms. Shaver's testimony, since the entire incident concerning Shana was made public by the trial.

In *Pickard,* as well, the question was much closer than in the instant case. In *Pickard,* we held that the State's interest in confidentiality was outweighed by defendant's right to *discovery,* an interest that is only tangentially related to a defendant's right to confrontation. Conversely, this case involves actual cross-examination—the "primary interest" secured by the confrontation clause. *Davis,* 415 U.S. at 308. Accordingly, because the State's goal in preserving confidentiality is fairly weak in this case, and because the interest claimed by the defendant involves

actual cross-examination, the trial court clearly erred by disallowing appellant's proposed line of questioning.

The more difficult issue is whether such error was harmless. The United States Supreme Court recently set out the standard for determining harmless error in confrontation clause cases in Delaware v. Van Arsdall, 475 U.S. 673 (1986). In *Van Arsdall,* the Court stated that "[t]he correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt." *Van Arsdall,* 475 U.S. at 684.

The *Van Arsdall* Court went on to hold that several factors were relevant in performing such an inquiry. These included: (1) the overall strength of the prosecution's case; (2) whether the desired testimony is cumulative; (3) the importance of the witness' testimony to the prosecutor; and (4) the presence or absence of corroboration of the witness' testimony. *Id.* Because the state appellate court in *Van Arsdall* had held that the error committed by the trial court required *per se* reversal, the United States Supreme Court remanded the case to the state court in order to make a harmless error determination. *Id.*

Our review of the record convinces us that, under the *Van Arsdall* standard, the trial court's error was prejudicial. To begin, this was a very close case. Shana, the prosecution's main witness, changed her stories often, falsely accused her half-brother of sexual assault, and admitted that the oath "didn't really mean that much." In addition, several pieces of circumstantial evidence, besides Ms. Shaver's prior statements, corroborate the defense theory that Jan Stamps had instigated the entire incident. For example, the accusations began several years after the alleged incidents of sexual abuse, but only a short time after Shana's parents separated and Jan filed for divorce. Also, several of the terms used by Shana in describing bodily parts were very advanced for a child of seven years of age.

This circumstantial evidence, by itself, was not enough to create a reasonable doubt in the jury's mind that Robert had committed sexual assault. Had appellant been allowed to confront Ms. Shaver with her earlier assessment of the child abuse allegations in this case and with the fact that Jan Stamps had made similar allegations in the past, Robert's theory of defense would have been made more plausible, especially assuming that the damaging potential of such testimony were fully realized. Finally, Robert was not able to cross-examine any of the other State witnesses on this point; thus, the testimony was not cumulative.

Because such important testimony was excluded in this close case, it cannot be said that the trial court's error was harmless beyond a reasonable doubt; therefore, reversal is mandated under *Van Arsdall.*

For the above reasons, we reverse appellant's conviction, and remand this case for a new trial.[3]

---

[3]We have reviewed appellant's remaining contentions, and have determined that these arguments are without merit.